## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

PACIFIC CHARTERING SERVICES INC.,

Plaintiff,

v.

MS "FRITZ" SCHIFFAHRTSGES MBH &
CO. REEDEREI KG,

Defendant.

C.A. No. 7:14-cv-947 (GLS/ATB)

**VERIFIED COMPLAINT IN
ADMIRALTY**

Plaintiff, Pacific Chartering Services Inc. ("Plaintiff"), by and through its undersigned attorneys, as and for its Verified Complaint in Admiralty against defendant, MS "Fritz" Schiffahrtsges MBH & Co. Reederei KG (the "Defendant"), alleges, upon information and belief, as follows:

### JURISDICTION

1.      This is a case of admiralty and maritime jurisdiction, 28 U.S.C. § 1333, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.      As is further set forth in the paragraphs which follow, Plaintiff brings this action pursuant to the provisions of Rule B of the Supplemental Rules for Admiralty or Maritime Claims in order to attach the Defendant's tangible or intangible property which is, or will shortly be, within the geographical confines of this District.  Such property includes the vessel M/V FRITZ (the "Vessel" or the "FRITZ"), IMO No. 9415155, her engines, freights, apparel, appurtenances, tackle, etc.

## PARTIES

3.      Plaintiff is a foreign corporation or other business entity organized under the laws of Texas and maintaining an office and place of business in Texas.

4.      Defendant is a foreign corporation or other business entity organized under the laws of Germany and maintaining a place of business in Germany.  Defendant is also the registered owner of the FRITZ.

## BACKGROUND FACTS

### The Vessel Agreement

5.      On or about December 31, 2010, non-party Intersee Schiffahrtsgesellschaft mbH & Co. KG ("Intersee") entered into a maritime contract with Defendant which concerned, amongst other things, Intersee's provision of various maritime services for the Vessel (the "Vessel Agreement").  A copy of the Vessel Agreement (in both its original, German-language form and in an English translation) is annexed hereto as Exhibit A.

6.      Amongst other things, the Vessel Agreement called for Intersee to perform the following tasks:

a.   "Coordination of the vessel" (Ex. A § 1.2.3) which task involved a range of activities by Intersee relating to the Vessel's maritime operations;

b.   "Control of the port disbursement account" (Ex. A § 1.2.4) which task involved a range of activities by Intersee relating to the control and settlement of port disbursement accounts (i.e., fees for port costs such as pilotage); and

c.   "Bunkering of the vessels [sic] . . . through a third party" which task involved a range of activities by Intersee relating to the provision of bunkers (maritime fuel) to the Vessel and settlement of invoices for such bunkers.

7.      In the event that Intersee made payments to settle the Vessel's port disbursements accounts or bunkers invoices, then the Defendant had an obligation to reimburse Intersee, in full, for such payments.

8.      In that respect, Intersee made payments to settle bunkers invoices and port disbursement accounts, as follows:

      a.   On or about January 18, 2013, Intersee paid $343,600.00 to O.W. Bunker Germany to settle three bunkers invoices.  On or about the same date, Intersee invoiced the Defendant for reimbursement of the same amount (converted to Euros 257,880.52 at the then prevailing, exchange rate).  However, Defendant has failed to reimburse Intersee for the same; and

      b.   On or about May 17, 2013, Intersee paid $181,939.00 to Blue Water Shipping Company to settle a port disbursement account.  On or about the same date, Intersee invoiced the Defendant for reimbursement of the same amount (converted to Euros 141,377.73 at the then prevailing, exchange rate).  However, Defendant has failed to reimburse Intersee for the same.

9.      However, in breach of its obligation, the Defendant failed to reimburse Intersee for such payments.

10.     Annexed hereto as Exhibit B are copies of invoices, together with supporting documents, evidencing the allegations set forth above.

11.     On account of the foregoing, Defendant has, in breach of its obligations arising from the Vessel Agreement, failed to reimburse Intersee in the total amount of, at least, $525,539.00.

**The Crew Agreement**

12.     On or about December 30, 2011, non-party Intership Maritime Crew Management GmbH ("Intership") entered into a maritime contract with Defendant which concerned, amongst other things, Intership's provision of a crew for the Vessel and Intership's payment of salaries for that crew (the "Crew Agreement").  A copy of the Crew Agreement is annexed hereto as Exhibit C.

13.     Pursuant to the Crew Agreement, Intership agreed, *inter alia*:

to undertake the selection and employment of a full crew, accounting of wages paid as well as payment of wages of the crew of the [Vessel] for and on behalf of the [Owners] in accordance with all rules and regulations appertaining to the vessel and in accordance with this contract.  (Ex. C ¶ 1)

14.     Also, pursuant to the Crew Agreement, the Defendant agreed to pay Intership:

a lumpsum payment of USD 65.000.00 [Sixty Five Thousand US Dollars] per calendar month or pro rata for part of a month during the whole period the Vessel is manned with the crew contracted and selected by [Intership]. (Ex. C ¶ 5)

15.     In accordance with such provisions, Intership itself paid all crew wages for the Vessel during the months of January, February and March 2014 (as well as at other times).  A copy of a letter evidencing the same is annexed hereto as Exhibit D.

16.     Intership accordingly invoiced the Defendant in the amount of $65,000.00 for January, February and March 2014.  Copies of such invoices are annexed hereto as Exhibit E.

17.     However, in breach of its obligations, the Defendant failed to pay Intership for any of the aforementioned invoices.

18.     On account of the foregoing, Defendant has, in breach of its obligations arising from the Crew Agreement, failed to pay Intership an amount equal to, at least, $195,000.

**The Technical Management Agreement**

19.     On or about December 28, 2012, non-party Intersee Shipmanagement GmbH & Co. KG (the "Technical Manager") entered into a maritime contract with Defendant which

concerned, amongst other things, the technical management of the Vessel (the "Technical Management Agreement").

20.    Pursuant to the Technical Management Agreement, the Defendant had an obligation to pay a management fee of Euros 10,000.00 per month to the Technical Manager.

21.    The Technical Manager accordingly issued to the Defendant: (i) an invoice for the months of July, August, September and October 2013 (totaling €40,000.00); (ii) an invoice for the months of November and December 2013 (totaling €20,000.00); (iii) an invoice for the months of January, February and March 2014 (totaling €30,000.00); and (iii) an invoice for the months of April, May and June 2014 (totaling €30,000.00).  Copies of such invoices are annexed hereto as Exhibit F.

22.    However, in breach of its obligations, the Defendant failed to pay the Technical Manager for any of the aforementioned invoices.

23.    On account of the foregoing, Defendant has, in breach of its obligations arising from the Technical Management Agreement, failed to pay the Technical Manager an amount equal to, at least, €120,000.00 which, at currently prevailing exchange rates, is equal to approximately $161,166.00.

**The Assignments**

24.    On or about July 4, 2014, Intersee and Plaintiff entered into a Deed of Assignment with respect to, amongst other things, the invoices which Intersee had issued to Defendant in connection with certain rights arising under the Vessel Agreement (the "Intersee Assignment"). A copy of the Intersee Assignment is annexed hereto as Exhibit G.

25.    Pursuant to the Intersee Assignment, and as is more fully described therein, Intersee assigned to Plaintiff the outstanding invoices issued under the Vessel Agreement, all

rights to receive payment (or damages determined to be due thereunder), and all rights relating to claims that might be brought against the Defendant with respect to the concerned invoices.

26.     Likewise, on or about July 4, 2014, Intership and Plaintiff entered into a Deed of Assignment with respect to, amongst other things, the invoices which Intership had issued to Defendant in connection with certain rights arising under the Crew Agreement (the "Intership Assignment"). A copy of the Intership Assignment is annexed hereto as Exhibit H.

27.     Pursuant to the Intership Assignment, and as is more fully described therein, Intership assigned to Plaintiff the outstanding invoices issued under the Crew Agreement, all rights to receive payment (or damages determined to be due thereunder), and all rights relating to claims that might be brought against the Defendant with respect to the concerned invoices.

28.     Likewise, on or about July 4, 2014, the Technical Manager and Plaintiff entered into a Deed of Assignment with respect to, amongst other things, the invoices which the Technical Manager had issued to Defendant in connection with certain rights arising under the Technical Management Agreement (the "Technical Manager Assignment"). A copy of the Technical Manager Assignment is annexed hereto as Exhibit I.

29.     Pursuant to the Technical Manager Assignment, and as is more fully described therein, the Technical Manager assigned to Plaintiff the outstanding invoices issued under the Technical Management Agreement, all rights to receive payment (or damages determined to be due thereunder), and all rights relating to claims that might be brought against the Defendant with respect to the concerned invoices.

30.     In light of the foregoing, Plaintiff is the real party in interest for all claims set forth herein including:

    a.   claims arising from the allegations set forth in paragraphs 5 to 11 above (relating to outstanding invoices for unreimbursed payments made in connection with the Vessel Agreement);

    b.   claims arising from the allegations set forth in paragraphs 12 to 18 above (relating to outstanding invoices for amounts due under the Crew Agreement); and

    c.   claims arising from the allegations set forth in paragraphs 19 to 23 above (relating to outstanding invoices for amounts due under the Technical Management Agreement).

31.     Defendant therefore owes the principal amount of, at least, $881,705.00 to Plaintiff on account of Defendant's breach of the Vessel Agreement (at least, $525,539.00), Defendant's breach of the Crew Agreement (at least, $195,000.00), and Defendant's breach of the Technical Management Agreement (at least, $161,166.00).

### FIRST CAUSE OF ACTION

32.     Paragraphs 1 through 31 are repeated and realleged as if fully set forth herein.

33.     Defendant has failed to perform its obligations under the Vessel Agreement and is thereby in breach of that maritime contract.

34.     Defendant's breach of the Vessel Agreement has caused Plaintiff to suffer damages in the principal amount of, at least, $525,539.00 and Defendant is therefore liable to Plaintiff for the same amount.

### SECOND CAUSE OF ACTION

35.     Paragraphs 1 through 31 are repeated and realleged as if fully set forth herein.

36.     Defendant has failed to perform its obligations under the Crew Agreement and is thereby in breach of that maritime contract.

37.    Defendant's breach of the Crew Agreement has caused Plaintiff to suffer damages in the principal amount of, at least, $195,000.00 and Defendant is therefore liable to Plaintiff for the same amount.

## THIRD CAUSE OF ACTION

38.    Paragraphs 1 through 31 are repeated and realleged as if fully set forth herein.

39.    Defendant has failed to perform its obligations under the Technical Management Agreement and is thereby in breach of that maritime contract.

40.    Defendant's breach of the Technical Management Agreement has caused Plaintiff to suffer damages in the principal amount of, at least, $161,166.00 and Defendant is therefore liable to Plaintiff in the same amount.

## RULE B ATTACHMENT

41.    Plaintiff expressly reserves all contractual rights available to it and brings this action: to obtain jurisdiction over the Defendant; to obtain security for Plaintiff's claims against the Defendant; and to obtain security for additional sums to cover anticipated interest and costs in the additional amount (as best can presently be estimated) of $200,000.00.

42.    Upon information and belief, and after investigation, Defendant cannot be found within this District for the purposes of Rule B of the Supplemental Rules for Admiralty or Maritime Claims, but Plaintiff is informed that Defendant has, or will soon have, tangible or intangible property within this District.

43.    Specifically, Plaintiff is informed that the Vessel is currently located at a Canadian port and that the Vessel will thereafter and in the near future (either directly or following a call at another port) proceed to the Eisenhower Lock (Massena, New York) in the St. Lawrence Seaway.

44.     Plaintiff therefore seeks to attach the Vessel, together with her engines, freights, apparel, appurtenances, tackle, and all other tangible or intangible property of the Defendant that may be located within this District, pursuant to the provisions of Supplemental Rule B.

45.     The total amount sought to be attached pursuant to Supplemental Rule B by Plaintiff against Defendant includes: (a) the principal claim in the amount of, at least, $881,705.00; and (b) estimated interest plus costs in the combined amount of $200,000.00.

**WHEREFORE**, Plaintiff prays, as follows:

1.      That process in due form of law according to the practice of this Court may issue against Defendant;

2.      That the Court, in accordance with the provisions of Rule B of the Supplemental Rules for Admiralty or Maritime Claims, direct the issuance of Process of Maritime Attachment and Garnishment attaching all assets within the District owned by Defendant, or in which the Defendant has an interest, in the amount of $1,081,705.00;

3.      That judgment be entered against the Defendant, and in favor of Plaintiff, in the amount of $1,081,705.00, plus costs and attorney's fees; and

4.     That the Court grant such other, further and different relief as may be just, proper

and equitable in the premises.

Dated: July 28, 2014
       New York, New York

                              Respectfully submitted,

                              **EATON & VAN WINKLE LLP**


                              By: s/ Ted G. Semaya
                                   Ted G. Semaya
                                   (Bar Roll Number 501708)
                                   Alan Van Praag
                                   (*pro hac vice* application being filed /
                                   NYS Bar Number 1414945)
                                   Edward W. Floyd
                                   (*pro hac vice* application being filed /
                                   NYS Bar Number 4392940)

                                   3 Park Avenue, 16th Floor
                                   New York, New York 10016

                                   Telephone: (212) 779-9910
                                   Facsmile:   (212) 779-9928
                                   Tsemaya@evw.com
                                   Avanpraag@evw.com
                                   Efloyd@evw.com

                                   *Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PACIFIC CHARTERING SERVICES INC.,<br><br>                Plaintiff,<br><br>    v.<br><br>MS "FRITZ" SCHIFFAHRTSGES MBH &<br>CO. REEDEREI KG,<br><br>                Defendant. | C.A. No.  7:14-cv-947 (GLS/ATB) |

## VERIFICATION

**Martin Faubion**, pursuant to the provisions of 28 U.S.C. § 1746, declares and states as follows:

    1.    I am the President of the Plaintiff, Pacific Chartering Services Inc., and I am fully authorized to make this Verification on Plaintiff's behalf.

    2.    I have read the foregoing Complaint and know the contents thereof and the same are true to the best of my knowledge, information and belief.  The sources of my information and the grounds for my belief are an examination of the papers relating to the matters in suit.

    I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 28, 2014
       Houston, Texas


MARTIN FAUBION